**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

**Civil Action No.:**

**Kern Salomon, Nathan Tsui and Linda Housley**

**Plaintiffs,**

**v.**

**CEC Entertainment d/b/a Chuck E. Cheese,**

**Defendant,**

## COMPLAINT AND JURY DEMAND

Plaintiffs Kern Salomon, Nathan Tsui and Linda Housley ("Salomon" "Tsui" "Housley" collectively the "Plaintiffs"), by and through undersigned counsel, files this Complaint against Defendant CEC Entertainment d/b/a Chuck E. Cheese ("CEC" or "Defendant") and states as follows:

### NATURE OF ACTION

This is an action under Title VII of the Civil rights Act of 1964 ("Title VII") and the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-401, *et seq*. to correct unlawful employment practices on the basis of national origin, race and retaliation, and to provide appropriate relief to Plaintiffs. Defendant has engaged in a pattern or practice of discrimination against the Plaintiffs. Defendant also subjected Plaintiffs to a hostile work environment on the basis of national origin and/or race.

## PARTIES

1. Plaintiffs Kern Salomon ("Salomon"), Nathan Tsui ("Tsui") and Linda Housley ("Housley"), at all relevant times herein, were and are citizens of the State of Colorado and. All the events and transactions upon which this suit is based occurred in the State of Colorado.

2. Plaintiffs Salomon and Housley are members of a protected class of individuals as defined by 42 U.S.C. § 2000e *et seq* and C.R.S. § 24-34-402. Specifically, Salomon is a Hispanic Male and Housley is Hispanic Female.

3. Plaintiff Tsui is a member of a protected class of individuals as defined by 42 U.S.C. § 2000e *et seq* and C.R.S. § 24-34-402. Specifically, Tsui is an Asian Male.

4. Defendant is an employer as defined by C.R.S. § 24-34-401(3) with a principal office located at 1707 Market Place Blvd., Suite 200, Irving, TX 75063 and a registered agent located at 1560 Broadway, Suite 2090, Denver, CO 80202.

## JURISDICTION

5. Jurisdiction is invoked pursuant to 28 U.S.C. §§451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) and 707 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") as well as C.R.S. §24-34-402. This Court has personal jurisdiction because Defendant transacts business in the State of Colorado.

## ADMINISTRATIVE HISTORY

6. Plaintiff Salomon has timely and properly exhausted his administrative remedies by filing an initial charge with the Equal Employment Opportunity Commission (EEOC) on April 12, 2016 based upon grounds of discriminated based upon national origin and retaliation.

7. Plaintiff Tsui has timely and properly exhausted his administrative remedies by filing an initial charge with the Equal Employment Opportunity Commission (EEOC) on April 12, 2016 based upon grounds of discriminated based upon race and retaliation.

8. Plaintiff Housley has timely and properly exhausted her administrative remedies by filing an initial charge with the Equal Employment Opportunity Commission (EEOC) on May 2, 2016 based upon grounds of discriminated based upon national origin, age and retaliation.

9. On or about October 15, 2019, Plaintiff Salomon received a probable cause determination from the EEOC. The determination stated in relevant part, "there is reasonable cause to believe [Defendant] violated Title VII, as alleged, in that [Plaintiff] was subjected to a hostile environment based upon his national origin, Mexican. Additionally, the evidence gathered supports that [Defendant] violated Title VII when [Plaintiff] was forced constructively discharged due to the [Defendant's] failure to correct the unlawful conduct."

10. On or about October 15, 2019, Plaintiff Tsui received a probable cause determination from the EEOC. The determination stated in relevant part, "there is reasonable cause to believe [Defendant] violated VII, as alleged, in that [Defendant] paid [Plaintiff] a lower wage and when [Defendant] subjected him to a hostile environment based on is race ("Asian"). Additionally, evidence supports that [Defendant] violated Title VII when [Plaintiff] was forced to resign his position due to the [Defendant's] failure to correct the unlawful conduct after [Plaintiff] complained about it."

11. On or about October 15, 2019, Plaintiff Housley received a probable cause determination from the EEOC. The determination stated in relevant part, "There is reasonable cause to believe [Defendant] violated Title VII, as alleged, in that [Defendant's] management retaliated against

[Plaintiff] by making a threatening statement to [Plaintiff] that's he was "more of a problem than she was worth" and informed [Plaintiff] that she would need to work at a different job location which was substantially farther away from her residence than her assigned job location. The imposition of these terms and conditions subjected [Plaintiff] to a constructive discharge from her job on or about July 27, 2015."

12. This lawsuit is timely filed within ninety (90) days after Plaintiffs receipt of a Notice of Right to Sue from the EEOC dated January 31, 2020.

## FACTUAL ALLEGATIONS

13. Plaintiffs incorporate by reference their prior allegations.

14. Plaintiff Tsui began working for Defendant on or about October 8, 2012. He was promoted to the managerial position of Opening Coordinator on or about July 21, 2014.

15. Plaintiff Salomon began working for Defendant in or around November 2013 as a Senior Manager.

16. Plaintiff Housley began working for Defendant on or about July 21, 2015, as a Store Manager.

17. During all relevant times, Sarah Smith ("Smith") was the General Manager and Plaintiffs' Supervisor.

18. Salomon is a Hispanic male.

19. Tsui is an Asian male.

20. Housley is a Hispanic female.

21. At all times during their employment Plaintiffs each performed their job in a satisfactory manner.

22. During their employment Plaintiffs were harassed by Smith because of their race and/or national origin.

23. Smith made several racist comments to Salomon beginning January 2014.

24. Smith stated to Salomon, "I would love to move to Cancun but I don't know if I can deal with all of the Mexicans there."

25. Smith would assign Salomon the tables that had Hispanic customers and state it was because the Mexican "tipped badly."

26. Smith told Salomon that he "probably crossed the border."

27. In or around March 2015, two Caucasian employees were hired whose duties were less than a manager. The two employees were hired at a higher hourly rate than Tsui made in a managerial position.

28. Smith began to purposefully short staff Tsui's shifts and then complained about things not being done correctly. However, Caucasian employees were not reprimanded by Smith if they were in similar situations.

29. Smith once remarked that Asians were bad drivers. She also mimicked an Asian person by squinting her eyes and asked, "who am I?" Her response was, "an Asian driving."

30. Smith would specifically assign any tables with Asians and minority customers to Tsui.

31. Tsui was subjected to unequal terms of employment compared to Caucasian employees. Tsui was forced to work every weekend. Caucasian employees made more than Tsui and were not required to work every weekend.

32. Tsui was assigned to train inexperienced new employees that were hired at a higher rate of pay. These employees were Caucasian females and immediately given lead positions. They had

less experience and seniority than Tsui but were paid more.

33. During this time Defendant posted an advertisement for open entry-level positions offering up to $11.00 an hour which was more than Tsui was making after nearly three (3) years of employment.

34. On or about March 16, 2015, Plaintiffs Salomon and Tsui contacted Human Resources Paige Thomas ("Thomas") and District Manager Wayne Tennis ("Tennis") regarding the harassment they continued to experience. Plaintiffs also reported that their concerns that Smith was stealing from the nightly deposits and forging their signatures on the deposit logs.

35. Salomon and Tsui informed HR and Tennis that Smith would instruct them not to deposit any overages. Smith would take these overages for her own benefit. Smith would then take the difference out of the registers on Salomon and Tsui's shifts so she could blame them for shortages.

36. Salomon asked Thomas during his call if the information would be kept confidential. Salomon was assured the information would remain confidential.

37. Following their complaint, Smith was issued a write up from Corporate. She began to immediately retaliate against Tsui and Salomon.

38. When Salomon reported to work the next day he was told by another employee that Smith knew Salomon had made a complaint. Smith stated that Salomon, "threw her under the bus" and that "everyone was going to hate him."

39. On or about April 26, 2015, Salomon contacted Tennis and complained that he was being retaliated against by Smith for lodging a complaint against her. Tennis stated that he was in the process of an investigation.

40. Upon information and belief, no investigation was ever conducted.

41. On or about July 21, 2015, Plaintiff Housley was hired.

42. During the week of July 21, 2015 through July 27, 2015, Housley was also subjected to racism and discrimination.

43. An employee named Hailey (last name unknown) told Housley that "I f***** hate Mexicans." When Housley told Hailey that she was Mexican, Hailey walked away.

44. Housley reported Hailey and the discriminatory comments to Tennis. Tennis stated, "you are more trouble than you are worth." Tennis did not investigate the complaints or reprimand Hailey.

45. Housley was also told that she would be transferred to another location far away from her residence. This was in retaliation for complaining about the discrimination.

46. On July 27, 2015, Housley was constructively discharged.

47. On or about August 17, 2015, Salomon reported that Hailey was making racist remarks about Mexicans to Salomon and another employee. This was Salomon's second complaint about this particular employee.

48. Salomon recommended Smith terminate the employee. Instead, Smith promoted the employee.

49. On or about October 6, 2015, Salomon contacted Thomas once again to follow up on the status of the investigation and to lodge further complaints about the discrimination he was still experiencing. There was never any resolution.

50. Following Hailey's promotion, she became team lead. She retaliated against Salomon and would create messes so that Salomon would be forced to clean them up. The environment was very hostile.

51. On or about October 11, 2015, Salomon was forced to resign. Salomon stated, that "Due to the very hostile work environment cause by retaliation and discrimination, and after several attempts to fix the situation through the District and HR managers I am left with no other option to put in my resignation."

52. When Tim Kerum ("Kerum"), Defendant's Regional Vice President, learned about Salomon's resignation, Kerum asked Salomon "Do you plan to open a cleaning business?" Wayne was insinuating that Mexicans work in the cleaning industry.

53. On or about October 26, 2015, Tsui was constructively discharged.

### FIRST CLAIM FOR RELIEF
### (National Origin Discrimination 29 C.F.R. § 1606.1)

54. The preceding allegations are incorporated by reference as if fully stated herein.

55. Defendant is an employer as that term is defined under Title VII.

56. Plaintiffs Salomon and Housley are Mexican Americans.

57. Plaintiff Tsui is an Asian American.

58. Defendant knowingly and willfully subjected Plaintiffs to national origin and/or race discrimination.

59. Defendant engaged in a pattern or practice of discriminating against Plaintiffs based upon their national origin and/or race.

60. Defendant knew its actions violated Title VII, or it was recklessly indifferent in that regard.

61. As a direct and proximate result of the foregoing actions of Defendant, Plaintiffs suffered and will continue to suffer, damages including but not limited to loss of front pay and back wages, earnings, benefits, insurance premiums, health care costs, diminution of future earning capacity, non-economic damages such as, but not limited to, mental anguish, inconvenience, attorney fees,

costs and expenses, and other damages to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Retaliation—Title VII)

62. The preceding allegations are incorporated by reference as if fully stated herein.

63. Defendant has engaged in unlawful retaliatory practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by terminating/forcing the resignation of the employment of the Plaintiffs because they opposed discriminatory practices.

64. The effect of the events described above have been to deprive Plaintiffs of equal employment opportunities in retaliation for exercising his federally protected rights.

65. Plaintiffs complained several times throughout their employment about the discrimination they received. Nothing was done.

66. Other colleagues were aware of the discrimination and harassment that Plaintiffs received and still nothing was done.

67. The unlawful employment practices described above were intentional.

The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

## THIRD CLAIM FOR RELIEF
### Discrimination in Violation of the Colorado Anti-Discrimination Act
### (C.R.S. § 24-34-402(1)(a))

68. Plaintiffs incorporates their preceding allegations by reference as if fully stated herein.

69. Defendant is an employer as defined by C.R.S. § 24-34-401(3).

70. Plaintiffs are members of a protected class of individuals based on national origin and/or

race as defined by C.R.S. § 24-34-402(1)(a).

71.     Plaintiffs were employees as defined by C.R.S. § 24-34-401(2) and at all times were qualified to perform the functions of their positions.

72.     Defendant willfully and intentionally subjected Plaintiffs to discrimination by making comments about them based upon their national origin and/or race.

73.     Defendant knew its actions violated CADA or was recklessly indifferent in that regard.

74.     As a direct and proximate result of the foregoing actions and conduct of Defendant, Plaintiffs have suffered, and will continue to suffer, economic damages including loss of back wages, front wages, and benefits, as well as non-economic damages including pain and suffering, humiliation, mental anguish, and inconvenience, Plaintiffs also seeks attorney's fees, costs and expenses, and other damages to be determined at trial. Plaintiffs' claim damages for these losses and injuries under C.R.S. § 24-34-405.

## FOURTH CLAIM FOR RELIEF
**Hostile Work Environment – Harassment in Violation of the Colorado Anti-Discrimination Act (C.R.S. § 24-34-402(1)(a))**

75.     Plaintiffs incorporate the preceding allegations by reference as if fully stated herein.

76.     Plaintiffs were subjected to harassing treatment because of their national origin and/or race.

77.     The comments and treatment Plaintiffs experienced were unwelcome.

78.     The treatment was sufficiently severe and pervasive to alter the conditions of Plaintiffs employment and created a hostile environment.

79.     Plaintiffs found the working environment to be hostile.

80.     A reasonable person in Plaintiffs circumstance would find the environment in which Plaintiffs worked to be hostile.

81. As a direct and proximate result of the foregoing actions and conduct of Defendant, Plaintiffs have suffered, and will continue to suffer, economic damages including loss of back wages, front wages, and benefits, as well as non-economic damages including pain and suffering, humiliation, mental anguish, and inconvenience, Plaintiffs also seeks attorney's fees, costs and expenses, and other damages to be determined at trial. Plaintiffs' claims damages for these losses and injuries under C.R.S. § 24-34-405.

### FIFTH CLAIM FOR RELIEF
### (Breach of Contract)

82. Plaintiffs incorporate the preceding allegations by reference as if fully stated herein.

83. Plaintiffs were aware of various policies and procedures throughout their employment.

84. Plaintiffs reasonably understood that Defendant was offering equal employment opportunities during their employment.

85. Plaintiffs performed according to the policies and procedures.

86. Defendant did not comply with its policies and procedures.

87. As a direct and proximate result of the foregoing actions and conduct of Defendant, Plaintiffs suffered, and will continue to suffer, damages including but not limited to loss of front and back wages, earnings, benefits, attorney fees, costs and expenses, and other damages to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### (Negligent Retention/Negligent Supervision)

88. Plaintiffs incorporate the preceding allegations by reference as if fully stated herein.

89. Defendant hired, supervised and retained Smith.

90. Smith was the General Manager during the relevant time frames.

91. Smith harassed Plaintiffs because of Plaintiffs national origin and/or race.

92. After Plaintiffs complained about Smith's harassment and discrimination, Smith retaliated against Plaintiffs.

93. Upon information and belief, Smith was also the subject of complaints from other employees.

94. Smith remained employed.

95. Defendant knew or should have known that Smith's conduct would subject third parties to an unreasonable risk of harm.

WHEREFORE, Plaintiffs Kern Salomon, Nathan Tsui and Linda Housley respectfully requests that this Court enter judgment in their favor and against Defendant, and award them damages for back pay, front pay, benefits, pre-judgment interest, liquidated damages, costs, expert fees, attorney's fees, and such other and further relief as this Court deems proper

**PLAINTIFFS DEMAND A TRIAL BY JURY**

DATED this 22nd day of April, 2020.

> */s/: Sara A. Green*
> Sara A. Green
> BACHUS & SCHANKER, LLC
> 101 W. Colfax Ave., Suite 650
> Denver, CO 80202
> 303-893-9800
> sara.green@coloradolaw.net
>
> Attorney for Plaintiffs